IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MCGOVERN                  :          CIVIL ACTION
                               :
          v.                   :
                               :
MVM, INC., et al.              :          NO. 04-2541

MEMORANDUM

Bartle, C.J.                                    February 19, 2008

          Plaintiff John McGovern, a former Court Security
Officer ("CSO") charged with protecting the United States
courthouse in Philadelphia, has sued MVM, Inc. ("MVM"), his
former employer, as well as the United States Marshals Service
("USMS").  He contends that he was wrongfully terminated after he
was medically disqualified from the CSO position by the USMS and
subsequently terminated by MVM.  His First Amended Complaint
brings three counts alleging violations of:  (1) his procedural
due process rights under the Fifth Amendment to the United States
Constitution by both MVM and the USMS; (2) the Rehabilitation Act
("RA"), 29 U.S.C. § 701, *et seq.*, by the USMS; and (3) violations
of the Americans with Disabilities Act ("ADA"), 42 U.S.C.
§ 12101, *et seq.*, by MVM.  Before the court are the motions of
MVM and the USMS for summary judgment.  Fed. R. Civ. P. 56(c);
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); In re Flat
Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

I.

Congress has given the USMS the obligation to provide for the security of the United States Courts.  28 U.S.C. § 566(a).  One of the ways in which the USMS meets this obligation is to contract with a number of private security companies, including MVM.  From October 1, 2001 to October 1, 2006, MVM held the contract to provide CSO's in each of the federal courthouses in the Third Circuit.

Beginning in January, 2001, the USMS implemented uniform medical standards and procedures for the CSO position. The history of the decision to implement these medical requirements, as well as the relationship between the CSO's, MVM and the USMS, has been documented in detail in a number of earlier opinions.  E.g. Wilson v. MVM, Inc., 2005 WL 1231968 (E.D. Pa. 2005).  We will not repeat that history here but merely reiterate that as a result of the new medical standards each CSO is required to have an annual medical examination to determine if he or she meets the medical qualification for the CSO position. The medical records from that examination are sent to a reviewing physician employed by the USMS.  That physician either accepts the CSO as medically qualified or informs the CSO that his or her status is "not medically qualified."  After receiving a "not medically qualified" letter, the CSO has 30 days to submit any additional medical documentation before a final determination is made.

-2-

Plaintiff McGovern began working as a CSO in the federal courthouse in Philadelphia in August, 1995.  He became an MVM employee when that company took over the CSO contract for the Third Circuit on October 1, 2001.  He submitted to a required annual medical examination on January 17, 2002.  In March of that year, a USMS physician determined that McGovern was "not medically qualified" to work as a CSO, and gave McGovern thirty days to submit additional medical information, particularly with respect to McGovern's chronic obstructive pulmonary disease ("COPD").  In response to the USMS's instructions, McGovern went to his personal pulmonary physician, Dr. Earl King, for the requested follow-up testing and timely submitted additional medical information in the form of a report from Dr. King.  On December 12, 2002, Dr. J.V. Barson, the USMS reviewing physician concluded that McGovern was medically disqualified from performing the essential functions of the CSO position as a result of his lung disease and problems with his blood oxygen levels.  The Contracting Officer of the USMS sent MVM a letter to that effect on January 8, 2003.  The next day MVM removed McGovern from the USMS contract and terminated him.

McGovern brought this suit challenging his termination in June, 2004.  The USMS and MVM each filed a motion to dismiss. This court granted those motions in part, dismissing certain of McGovern's claims against each defendant.  McGovern v. MVM, Inc., 2004 WL 2554565, *1 (E.D. Pa. Nov. 9, 2004).  On July 18, 2005, while the case was still in the discovery phase, the court placed

-3-

the matter in suspense pending a decision from the Court of
Appeals in Wilson v. MVM, 475 F.3d 166 (3d Cir. 2007).  Wilson
presented some of the same issues facing the court in the instant
matter.  Once Wilson was decided, plaintiff filed an Amended
Complaint and the parties were given the opportunity to conclude
discovery.  As noted above, MVM and the USMS now move for summary
judgment.

                              II.

        McGovern first alleges that the USMS violated his
procedural due process rights under the Fifth Amendment when its
reviewing physician found him to be medically disqualified.  He
contends that he should have received a hearing and accuses the
USMS reviewing physician of failing to review the medical report
of Dr. King, McGovern's personal physician.

        The Wilson decision is clearly dispositive of this
claim.  475 F.3d 166.  There, three CSO's employed by MVM and
found to be medically disqualified by the USMS brought suit in
which they contended the USMS violated their due process rights.
The Wilson court concluded that the CSO's had a constitutionally
protected property interest in their employment and were entitled
to procedural due process, the basic requirements of which are
notice and an opportunity to be heard.  Id. at 177-78.  To
determine the precise contours of the notice and hearing required
before the CSO's could be found medically disqualified, the court
balanced the plaintiff's interest in continued employment against
the government's interest in "providing healthy, physically

                             -4-

qualified security to protect its court houses and employees."
Id. at 178-79.  The court then examined "the risk of error in the
procedure used compared with the degree of improved accuracy that
additional procedures would provide."  Id. citing Mathews v.
Eldridge, 424 U.S. 319, 334-35 (1976).

The Wilson court held that the CSO's were accorded
sufficient process under the Due Process Clause and affirmed this
court's decision granting the motion of the USMS and other
federal defendants for summary judgment on this question.  Id. at
179.  The court explained:

> After the appellants were termed medically
> disqualified, but before they were
> terminated, they were provided with notice of
> their medical disqualification and offered an
> opportunity to respond with medical
> documentation from their own doctors
> regarding their ability to perform their
> positions.  While this is not a traditional
> hearing, the process afforded the appellants
> is sufficient given the balance of their
> interest in maintaining employment and the
> government's interest in security.  A more
> rigorous process would not significantly
> enhance the accuracy of the medical
> qualification process.

Id. at 178-79, citing Matthews, 424 U.S. at 335.

The relevant facts of Wilson are identical to the facts
of the present case.  McGovern admits that he was provided with a
letter informing him of his medical disqualification and that he
was afforded the opportunity to submit additional medical
documentation before a final decision was made.  McGovern did, in
fact, submit such documentation from Dr. King.  He cites to no
evidence supporting his contention that the USMS reviewing

physician did not consider Dr. King's report.  To the contrary, the medical disqualification letter signed by the USMS reviewing physician references information which originated in Dr. King's report, namely, "the Pulmonary Function Test results, the Blood Gas results, the Oximetry Walk test results, and [the fact that McGovern] continu[ed] to smoke."  Thus, the record is uncontroverted that the USMS reviewing physician considered the additional information supplied by Dr. King before he made his final determination as to McGovern's medical qualifications for the CSO position.

The Court of Appeals in Wilson clearly ruled that the medical review process employed by the USMS affords sufficient notice and opportunity to be heard so as to satisfy the requirements of the Constitution.  Accordingly, we will grant the USMS's motion for summary judgment as to McGovern's due process claims against it.

McGovern additionally brings a claim against the USMS for violations of the Rehabilitation Act of 1973, as amended. The RA provides that:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency ....

29 U.S.C. § 794(a).  The RA incorporates the substantive liability standards of the Americans with Disabilities Act (ADA).

-6-

Id. at § 794(d).  Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir.
1996).  To make out a prima facie case of discrimination under
the ADA and thus under the RA, a plaintiff must show that he:
(1) is disabled within the meaning of the ADA; (2) is otherwise
qualified to perform the essential functions of the job, with or
without reasonable accommodations by the employer; and (3) has
suffered an adverse employment decision.  Shaner v. Synthes, 204
F.3d 494, 500 (3d Cir. 2000).  In addition to these substantive
elements, McGovern must also establish that he was an employee of
the federal government and that he has exhausted his
administrative remedies.  See Bracciale v. City of Phila., 1997
WL 672263, *5 (E.D. Pa. Oct. 29, 1997); Spence v. Straw, 54 F.3d
196, 200 (3d Cir. 1995).  If a plaintiff succeeds in establishing
a prima facie case, the burden shifts to the defendant "to
articulate some legitimate, nondiscriminatory reason for the
employee's rejection." Shaner, 204 F.3d at 500 (citation
omitted).  "Finally, should defendant carry this burden, the
plaintiff then must have the opportunity to prove ... that the
legitimate reasons offered by the defendants were not its true
reasons, but were a pretext for discrimination."  Id.

        Before considering the merits of USMS's summary
judgment motion as to McGovern's RA claim, we note that he
brought an identical claim under the RA in his initial complaint.
It was dismissed by this court on November 9, 2004.  McGovern v.
MVM, Inc., 2004 WL 2554565.  In our earlier opinion, we
considered the terms of the applicable labor contract and applied

-7-

the thirteen factor test outlined in <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751-52 (1989), in deciding that McGovern was an independent contractor of the USMS, not an employee.  <u>McGovern</u> at *2.  Because McGovern was not a federal employee, we held that he was not eligible to bring a claim against the USMS under the RA.  <u>Id.</u>

         McGovern argues that the decision of the Court of Appeals in <u>Wilson</u> constitutes new law that must now be applied by this court.  According to McGovern, the court determined in <u>Wilson</u> that CSO's are federal employees.  <u>Wilson</u>, 475 F.3d 166.  This is not an accurate reading of that decision.  In <u>Wilson</u>, the Court of Appeals stated:  "we need not reach the issue of which test to employ to determine whether the CSO's were federal employees or whether the District Court's determination was appropriate under the <u>Reid</u> test."  <u>Id.</u> at 173.  It determined the plaintiff's claims failed on other grounds.  <u>Wilson v. MVM, Inc.</u>, 2004 WL 765103, *8 (E.D. Pa. Apr. 1, 2004); <u>Wilson v. MVM, Inc.</u>, 2004 WL 1119926, *2 (E.D. Pa. May 18, 2004).

         In any event, even if McGovern were a federal employee, the grant of summary judgment against him is still proper.  The USMS first argues that McGovern is not disabled within the meaning of the ADA, the same standard that is applicable under the RA.  The ADA defines "disability" as:  (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; (3) being regarded as having such an impairment.  42 U.S.C. § 12102(2).

McGovern contends that he was regarded as disabled by the USMS.
In making this argument, McGovern must do more than demonstrate
that the USMS was aware that he had an impairment.  Sutton v.
United Air Lines, 527 U.S. 471, 491-92 (1999).[1]  Instead, to
defeat a motion for summary judgment he must come forward with
evidence that the defendant either:  (1) "mistakenly believes
that [he] has a physical impairment that substantially limits one
or more major life activities," or (2) "mistakenly believes that
an actual, non-limiting impairment substantially limits one or
more major life activities."  Id. at 489.  The mere fact that an
employer has medical requirements in place does not mean that the
employer regards any employee who does not meet those
requirements as substantially limited in one or more major life
activities.  Id. at 490.

        McGovern argues that there are disputed questions of
material fact as to whether his disqualification from the USMS
contract was based on an erroneous perception that his
disabilities would substantially limit him in the major life
activities of walking, breathing and working.  In particular, he
cites to the "Medical Review Form" completed by Dr. Barson, the
USMS physician responsible for reviewing McGovern's case.  That
report catalogues the tests and information considered by Dr.

----

1.  In the Sutton case, the plaintiffs were suing a potential
employer who had rejected their employment applications.  As just
discussed, this court has held that the USMS was not plaintiff's
employer.  Nonetheless, cases against employers or prospective
employers are relevant in considering Plaintiffs' RA claim.

Barson and states that McGovern suffered from "significant lung disease, decreased arterial blood oxygen, increased arterial blood carbon dioxide, increased arterial blood carboxyhemoglobin, and a decreased arterial blood oxygen saturation."  As a result of these impairments, the doctor declared that McGovern would be unable to perform some of the essential CSO job functions, namely:  "a. Subduing a physically attacking person; b. Physically controlling violent or unruly crowds; c. Responding to an emergency with unplanned strenuous physical activity; and d. Climb stairs (at least two flights) in pursuit or in an emergency."  The report concludes with the following language:

> This condition places you and others at risk of harm to health and safety due to possibility of sudden incapacitation on the job.  The exercise requirements of the job are variable and unpredictable.  A weapons-bearing position is an arduous and hazardous job involving life and death situations that may occur at any moment.  Therefore, your condition places you and others at significant risk due to your inability to maintain a constant state of readiness, and we recommend medical disqualification.

McGovern contends that this language establishes that the USMS regarded him as significantly limited in the major life activity of working.  To show that he was regarded as significantly limited in this way, McGovern must come forward with evidence that he was regarded as unable to work in a broad class of jobs, as opposed to a singular, particular job.  Sutton, 527 U.S. at 491; 29 C.F.R. § 1630.2(j)(3)(i).  The USMS claims that the reviewing doctor limited his analysis to whether

McGovern could perform the essential jobs functions of a CSO.
When inferences from the report are taken in the light most
favorable to McGovern, however, we find that the report creates a
disputed issue of material fact as to whether the USMS perceived
McGovern as unfit to hold law enforcement positions more
generally.  The report makes a broad reference to "weapons-
bearing positions" and McGovern's general inability to "maintain
a constant state of readiness."  Law enforcement jobs constitute
a class of jobs under the ADA.  Williams v. Phila. Hous. Auth.
Police Dep't, 380 F.3d 751, 763 (3d Cir. 2004).  Further, an
employer's perception that an employee was unable to carry a
firearm constitutes a significant restriction on that employee's
ability to perform law enforcement jobs.  Id. at 766-67.

     The USMS next asserts that it is entitled to summary
judgment because McGovern has no evidence as part of a prima
facie case that he is "otherwise qualified to perform the
essential functions of the job, with or without reasonable
accommodations by the employer."  Shaner, 204 F.3d at 500
(citation omitted).  A qualified individual with a disability is
"an individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires."  42
U.S.C. § 12111(8); see also 29 C.F.R. § 1630.2(m).

     Under the ADA, "[C]onsideration shall be given to the
employer's judgment as to what functions of a job are
essential... ."  42 U.S.C. § 12111(8).  The record shows that in

-11-

January 2001, after reviewing an analysis of the CSO job function by the United States Health Service, the Judicial Conference implemented a list of essential job functions for the CSO position and adopted a new set of medical standards for CSO's. The USMS adopted new protocols for the hiring of CSO's pursuant to a Judicial Conference directive.  Though McGovern asserts that some of the job functions included by the USMS are overly demanding for the "low risk profile" of the CSO job, he does not cite to any evidence suggesting that the essential functions of the CSO job are anything other than as the USMS has described them.  Thus, for purposes of the instant motion, we consider the list of essential job functions by the Judicial Conference to be operative in determining whether McGovern was "otherwise qualified" as a CSO.

The USMS points to the report of its reviewing physician, Dr. Barson, which concluded that McGovern's health problems rendered him unable to perform the following essential job functions of a CSO:  (1) subduing a physically attacking person; (2) physically controlling violent or unruly crowds; (3) responding to an emergency with unplanned strenuous physical activity; and (4) climbing at least two flights of stairs in pursuit or in an emergency.  McGovern counters by asserting that the USMS disregarded the report submitted to them by his physician, Dr. King, that Dr. King's report did not restrict or prohibit McGovern from working as a CSO, and that he had worked as a CSO for eight years without incident.

McGovern points to nothing in the record demonstrating a disputed issue of material fact as to his ability to perform the essential functions of the CSO position.  As noted earlier, Dr. Barson's report refers to and draws from Dr. King's report. Dr. Barson clearly considered Dr. King's report before making his final medical determination.  McGovern is also incorrect to characterize Dr. King's report as opining that McGovern should not be restricted or prohibited him from working as a CSO. Nothing that Dr. King said indicates that he expressed an opinion one way or the other as to McGovern's ability to perform the essential functions of the CSO position, and he was not asked to provide such an opinion.  Finally, the fact that plaintiff had worked at the CSO job for eight years without incident is of no moment to the present inquiry.  Such "vague assertions of past satisfactory job performance and the ability to perform the essential job functions" do not suffice to raise a disputed issue of material fact as to whether McGovern was otherwise qualified for the CSO position.  Fromm v. MVM, Inc., 2006 WL 133540, *6 (M.D. Pa. 2006).  The relevant inquiry is "whether officers are *capable* of performing certain fundamental job functions, not whether they have in fact been required to do so." Allen v. Hamm, 2006 WL 436054, *8 (D. Md. Feb. 22, 2006), aff'd 226 Fed. Appx. 464 (4th Cir. 2007), cert. den. sub nom Blades v. Hamm, 2007 WL 2292974 (U.S. Oct. 9, 2007) (emphasis in original); see also Basith v. Cook County, 241 F.3d 919, 929 (7th Cir. 2001). McGovern has pointed to no other evidence, medical or otherwise,

that would suggest that he was capable of performing the essential functions of the CSO position, as outlined by the USMS. Furthermore, he has not pointed to any reasonable accommodation that would have allowed him to perform those essential functions.

Finally, McGovern has not responded to the evidence of the USMS that the application of the CSO medical standards in his case was a legitimate and non-discriminatory reason to find him medically disqualified. McGovern has cited to nothing to indicate that this reason was pretextual.

Accordingly, we will grant the motion of the USMS for summary judgment as to McGovern's claims under the Rehabilitation Act.

III.

We now turn to McGovern's claims against defendant MVM under the ADA and the due process clause of the Fifth Amendment of the Constitution.

First, McGovern alleges that MVM violated the ADA when it terminated him as an MVM employee. The ADA prohibits employment discrimination on the basis of disability. 42 U.S.C. § 12112(a). Among other forms of unlawful discrimination, the ADA prohibits employers from "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to [disability] discrimination." 42 U.S.C. § 12112(b)(2). In other words, an employer may not achieve "through a contractual ... relationship what it is prohibited

-14-

from doing directly."  29 C.F.R. § 1630.6.  McGovern argues that
MVM violated the ADA by virtue of the terms of its contract with
the USMS.  That contract specified that the USMS reviewing
physician makes the ultimate determination about a CSO's medical
fitness and that MVM plays no role whatsoever with respect to any
decision concerning the medical qualifications to become or
continue to be a CSO.  If a CSO does not meet the medical
qualifications established by the USMS, he is not permitted to
work as a CSO under the contract.  Nothing in the contract
permits MVM to challenge or override the decision of the USMS as
to whether the CSO is medically qualified.  McGovern contends
that by permitting the USMS to make that decision unilaterally,
MVM entered into a contract which has the effect of subjecting
one of its employees to unlawful disability discrimination.

McGovern's theory seeks to hold MVM vicariously
responsible for the unlawful conduct of the USMS under the ADA.
As we determined earlier, the actions of the USMS did not violate
the RA, which contains the same substantive liability standards
as the ADA.  29 U.S.C. § 794(d); Antol v. Perry, 82 F.3d 1291,
1299 (3d Cir. 1996).  Thus, MVM cannot be derivatively liable for
any such violation under § 12112(b)(2).  See Fromm v. MVM, Inc.,
2006 WL 133540, *6 (M.D. Pa. 2006).

McGovern also argues that MVM's conduct directly
violated the ADA.  As discussed above, to make out a prima facie
case of discrimination under the ADA, McGovern must produce
evidence that he:  (1) is disabled within the meaning of the ADA;

(2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) has suffered an adverse employment decision. Shaner, 204 F.3d at 500.  The ADA defines "disability" as:  (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; (3) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  Here, McGovern maintains that he is disabled under the ADA because MVM regarded him as disabled.  This argument lacks merit.

The uncontested evidence in this case is that MVM did not regard McGovern as substantially limited in any of the major life activities of breathing, walking, lifting or working.  The record is undisputed that McGovern was terminated by MVM only because he did not meet the medical standards established for the CSO position by the USMS.[2]  Accordingly, McGovern cannot make

---

2.  McGovern concedes in his memorandum in opposition to MVM's motion for summary judgment:

> For purposes of [MVM's motion for summary judgment] Plaintiff, [sic] accepts certain facts stated by MVM ... to wit[:] 'MVM terminated Plaintiff's employment as a CSO because the USMS determined that he was medically disqualified to continue working as a CSO; MVM did not believe that Plaintiff was not qualified to continue working as a CSO; Plaintiff's COPD is controlled by the medication he takes for that condition.  MVM would have continued to employ Plaintiff as a CSO but for the USMS' determination that he was medically disqualified; MVM would have
> (continued...)

out a prima facie case of disability discrimination under the ADA on the ground that MVM regarded him as disabled.  The motion of MVM for summary judgment on McGovern's ADA claim will be granted.

Finally, McGovern brings a claim against MVM for violations of procedural due process.  MVM does not dispute that McGovern had a protected property interest in his continued employment which is protected by the due process clause of the Fifth Amendment.  Instead, MVM maintains that its motion for summary judgment should be granted as to this claim because it is not a state actor and thus is not subject to the requirements of the due process clause.  MVM also contends that McGovern did not exhaust the steps in the administrative process through which he was entitled to grieve his termination from MVM.  Even were we to determine that MVM is a state actor, McGovern's claim under the due process clause must fail because he did not exhaust the grievance procedures provided to him by the Collective Bargaining Agreement ("CBA") between his union and MVM.  See Wilson, 475 F.3d at 176.

"Before bringing a claim for failure to provide due process, 'a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.'"  Id., quoting Alvin v.

---

2.(...continued)
          re-hired Plaintiff as a CSO if the USMS
          determined that he was medically qualified.'

Pl.'s Mem. in Opp. to MVM's Mot. at 4, n.1.

Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  When McGovern was
terminated from MVM, the terms of his employment were governed by
a CBA between his union and MVM that was in place from October 1,
2002 through September 30, 2005.  The CBA lays out a multi-step
grievance process that governs "any dispute concerning wages,
hours, or working conditions of employees covered by this
agreement," including an employee's termination.  After an
informal step, which is not at issue here, the employee may
proceed to Step One.  Step One provides that the employee shall
set forth the facts of the grievance in writing and submit it to
the Contract Manager at MVM.  The Contract Manager must respond
in writing within ten days.  If the matter is not resolved to the
employee's satisfaction in Step One, the employee may proceed to
Step Two by appealing the grievance in writing to the Director of
Human Resources within ten days of the denial by the Contract
Manager.  The Director of Human Resources must then respond
within ten days with a decision in writing.[3]

---

3. McGovern contends that the CBA also included a:

> Part two of Step 1 which states 'the contract
> manager and a representative of the Union
> shall meet within seven (7) working days of
> service of said grievance for the purpose of
> discussing and, if possible, settling said
> grievance.  The Employer shall give to the
> Union its answer to the grievance and its
> reasons therefor with three (3) working days
> of the conclusion of such meeting.'

Pl.'s Mem. in Opp. to MVM's Mot. at 24.  McGovern did not provide
to the court the document from which he purports to quote, and we
have found no such provision in the CBA as provided to us by MVM.
(continued...)

In the instant matter, McGovern submitted a grievance at Step One.  It was denied by MVM.  However, McGovern did not appeal the denial of his grievance to the Director of Human Resources under Step Two.  "Because there is process on the books that 'appears to provide due process' and [McGovern] failed to take advantage of that process, [he] cannot now 'use the federal courts as a means to get back what [he] want[s].'"  Wilson, 475 F.3d at 176, quoting Alvin, 227 F.3d at 116.

Recognizing that he did not complete the administrative process, McGovern contends that he should be excused from doing so because it would have been futile.  "Where access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim."  Wilson, 475 F.3d at 176, citing Alvin, 227 F.3d at 118.

First, McGovern contends that "Plaintiff was given no process at all despite his efforts."  Pl.'s Mem. in Opp. to MVM's Mot. at 24.  The undisputed evidence cited above shows otherwise. McGovern's grievance was denied at Step One, and it was McGovern, not MVM, who bore the responsibility of taking the grievance to Step Two.

---

3.(...continued)
Because McGovern does not cite to record evidence on this matter, he has not raised a disputed issue of material fact and the CBA as provided by MVM constitutes the undisputed evidence of the steps in the grievance process.

Next, according to McGovern, a letter sent to him by Steven Gottrich, MVM Senior Operations Coordinator, MVM Criminal Justice Services on February 24, 2003 demonstrates that the CBA process was futile.  This letter was apparently a response to a letter from McGovern to Gottrich dated February 18, 2003, which purported to appeal the decision of the USMS that McGovern was not medically qualified to perform the essential functions of the CSO job.  The portion of Gottrich's letter on which McGovern relies states that "[t]here is nothing that I, nor MVM can do to address your appeal for reinstatement."  With this argument, McGovern confuses the two distinct issues of his ability to appeal the medical determination of the USMS and his ability to appeal his subsequent termination by MVM.  McGovern could not use the process described in the CBA with MVM to appeal a determination of the USMS.  Instead, McGovern was entitled to use the CBA process to grieve his *discharge* from MVM.  Since Gottrich's letter concerns only McGovern's desire to appeal his medical disqualification, not his termination from MVM, it is irrelevant to the question of whether the procedures under the CBA were futile and will not be considered as evidence on that question.

Finally, McGovern maintains that the testimony of John Gillin, an MVM Site Supervisor and MVM's Rule 30(b)(6) deponent in the Wilson case, establishes that the administrative procedures under the CBA were futile.  McGovern argues this testimony establishes that "MVM did not process the Plaintiff's

-20-

grievance under the CBA, but rather forwarded the grievance appeals and supporting documentation directly to the USMS for reconsideration."  Pl.'s Mem. in Opp. to MVM's Mot. at 25.  The testimony cited by McGovern is of no moment to the question of futility here.  The testimony was given with respect to the medical disqualifications of the <u>Wilson</u> plaintiffs and makes no reference to McGovern's situation.  Furthermore, it references an attempt to appeal the medical disqualification determination made by the USMS, rather than an appeal of the plaintiffs' termination by MVM.

Accordingly, we will grant the motion of MVM for summary judgment as to McGovern's claim under the due process clause of the Fifth Amendment.

IV.

In sum, the motions for summary judgment of the USMS and MVM will be granted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MCGOVERN               :          CIVIL ACTION
                            :
          v.                :
                            :
MVM, INC., et al.           :          NO. 04-2541

_____ ORDER _____

        AND NOW, this 19th day of February, 2008, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

        (1)  the motion of the United States Marshals Service
for summary judgment (Doc. No. 42) is GRANTED;

        (2)  judgment is entered in favor of the United States
Marshals Service and against plaintiff John McGovern;

        (3)  the motion of defendant MVM, Inc. for summary
judgment (Doc. No. 41) is GRANTED; and

        (4)  judgment is entered in favor of defendant MVM,
Inc. and against plaintiff John McGovern.

                                BY THE COURT:


                                /s/ Harvey Bartle III
                                _____
                                                        C.J.